OPINION OF THE COURT
Scott Fairgrieve, J.
Respondent Charlene Warren moves for summary judgment because the petitioner, 385 Bayview LLC, “waived the petition by accepting rent between the alleged termination of tenancy and before service of the petition.” Petitioner opposes the motion.
Petitioner commenced this holdover petition to remove respondent from apartment 6-P, 385 Bayview Avenue, Inwood, New York. The petitioner alleges that occupancy was terminated by a statutory 30-day notice that expired on June 30, 2014.
The notice of termination, dated May 27, 2014, states:
‘You are hereby notified that the Landlord elects to terminate your tenancy of the above-described premises now held by you under monthly hiring. Unless you remove from the said premises on or before June 30, 2014, the day on which your term expires, the Landlord will commence summary proceedings under the Statute to remove you from said premises for the holding over after the expiration of your term and will demand the value of your use and occupancy of the premises during such holding over.
“The apartment is decontrolled and not subject to ETPA. The lease expired on September 30, 2013 and the tenant continued as a month to month tenant with an expired RAP [Housing Assistance Payment] contract.”
Respondent Charlene Warren states in her affidavit, sworn to October 27, 2015, that petitioner received $625 of her rent from the Nassau County Department of Social Services (DSS) on or about July 1, 2014. Also, the petitioner received the subsidy payment from her rent on or about July 1, 2014. Respondent was served with the notice of petition on July 14, 2014.
In his affirmation, respondent’s attorney, Richard Semegram, contends that petitioner vitiated the notice to terminate by accepting rent between the attempted termination of tenancy and the service of the petition, which is called the window period.
*291 Respondent submits the affidavit of Martin H. Schwartz, Assistant Director of the Nassau County Office of Housing and Community Development, which states that there is no record of petitioner returning the payment sent for respondent’s apartment.
John Sarcone, Executive Director of the Nassau County Office of Housing and Community Development, states that his office administers the Section 8 tenancy of Charlene Warren at 385 Bayview Avenue, apartment 6-P, Inwood, New York, which is an enhanced voucher tenancy governed by the Housing and Urban Development Section 8 Housing Choice Voucher Program. There is no record that the enhanced subsidy HAP check for July of 2014 for respondent’s apartment was returned by petitioner.
The affidavit of Elizabeth Hulsen, employed by the Nassau County Department of Social Services as a Social Welfare Examiner I, states that the shelter assistance made to petitioner on behalf of respondent in the sum of $625 in July of 2014 was never returned by petitioner.
In opposition, petitioner submits the affidavit of Ashka S. Patwa, Esq., wherein she states that the lease was terminated on June 30, 2014 by service of a 30-day notice. Respondent was served with the notice of petition and petition on July 14, 2014.
Petitioner argues that respondent fails to demonstrate that the landlord accepted any payment during the window period (July 1, 2014 to July 14, 2014). The rent records demonstrate that four DSS payments were deposited on August 20, 2014 for the months of April, May, June and July.
Petitioner further argues that even if the proof shows an acceptance of rent during the window period, this does not require dismissal. Petitioner contends that respondent wasn’t aware of acceptance of the payments by petitioner until well after this case was already in court. Therefore, respondent “could not have been under the impression that she need not surrender possession of the premises.” Furthermore, petitioner never gave any impression to respondent that it was going to reinstate respondent’s tenancy. Acceptance of rent cannot be equated with waiver of the termination of respondent’s tenancy.
In response, respondent submits the certification of records signed by John Sarcone, Executive Director of the Nassau County Office of Housing and Community Development, dated December 3, 2015, which states that on July 1, 2014, a direct *292 deposit of rent was made into the account of petitioner on behalf of respondent.
The notarized letter, dated December 7, 2015, from Valerie A. Aguis, Accountant III, DSS, states that “[i]t is usual procedure for Nassau County Department of Social Services to mail Recurrent Direct checks dated the first of every month, on the last day of the prior month.”
Decision
The evidence demonstrates that petitioner received payments from the Nassau County Department of Social Services and the Nassau County Office of Housing and Community Development during the window period. These payments were never returned to the payors.
The issue for this court to determine is whether the 30-day termination notice was vitiated by the rent payments to petitioner.
Petitioner cites the case of Matter of Georgetown Unsold Shares, LLC v Ledet (130 AD3d 99 [2d Dept 2015]) for the proposition that the cashing of the said check does not constitute an intentional waiver of the effectiveness of the 30-day termination notice.
In Matter of Georgetown Unsold Shares, LLC, the respondent lived in a rent-stabilized apartment in Queens. The petitioner caused a nonrenewal notice to be served on respondent because the apartment was not respondent’s primary residence. The petitioner received unsolicited rent checks for the months of May and June in 2010 from the respondent. Subsequently, petitioner commenced a holdover proceeding against respondent.
Respondent cross-moved to dismiss the holdover proceeding on the grounds that acceptance of the rent payments vitiated the nonrenewal notice and should cause the holdover proceeding to be dismissed. Both the Civil Court and the Appellate Term agreed with respondent’s position and dismissed the summary proceeding.
On appeal the Second Department reversed and held that there was no evidence to show that petitioner intentionally relinquished its intention to evict respondent by acceptance of the checks:
“Here, the record is devoid of evidence that the petitioner intentionally relinquished its right to proceed on its nonrenewal notice merely by accept *293 ing rent checks after the expiration date of the lease. There is no evidence that the petitioner either affirmatively acted in order to solicit Ledet’s rent checks after service of the nonrenewal notice (cf. Metropolitan Ins./Annuity Co. v Rowinski, 8 Misc 3d 477, 479 [Civ Ct, NY County 2004]), or that the petitioner gave Ledet the impression that it intended to reinstate her tenancy after it served the nonrenewal notice (cf. New York City Hous. Auth. v McNeil, 17 Misc 3d 1130[A], 2007 NY Slip Op 52208[U], *3-4 [Civ Ct, Kings County 2007]). There was no tender of a renewal lease or billing at an increased rent, hallmarks that the petitioner in fact intended to renew the lease. Moreover, the representative of the petitioner’s managing agent averred in her affidavit that she deposited Ledet’s checks in the mistaken belief that they represented use and occupancy payments. The acceptance of rent under these circumstances does not, by itself, constitute unequivocal evidence of a landlord’s intent to waive its right to proceed against a tenant. To the extent that the Appellate Division, First Department, reached a contrary conclusion in 205 E. 78th St. Assoc. v Cassidy (192 AD2d 479 [1993]), we do not find its rationale persuasive. In that case, the First Department apparently gave considerable weight to the fact that the landlord did not correct its claimed ‘inadvertent’ acceptance of a single rent payment by returning the payment. However, we do not agree that a landlord must return an unsolicited payment, and thereby allow the tenant to occupy the apartment at no cost, in order to retain its right to proceed on a timely served non-renewal notice. Accordingly, we conclude that, by accepting Ledet’s rent checks, the petitioner’s managing agent did not nullify the petitioner’s previous service of its nonrenewal notice.
“We therefore conclude that the Appellate Term erred in implicitly finding that the petitioner’s acceptance of rent checks from Ledet nullified the nonrenewal notice (see Goldman v Becraft, 6 Misc 3d 135[A], 2001 NY Slip Op 50152[U] [App Term, 1st Dept 2001]; West Waverly Equities Group v Lieff, 190 Misc 2d at 281; Baginski v Lysiak, 154 Misc 2d at 276-277; see also Beacon 109 223-225 LLC v Mon Sheng Wu, 32 Misc 3d 140[A], 2011 NY Slip Op *294 51570[U] [App Term, 1st Dept 2011]; 8 W. 9th St., LLC v Hunter, 14 Misc 3d 145[A], 2007 NY Slip Op 50428 [U] [App Term, 1st Dept 2007]; Metropolitan Ins. & Annuity Co. v Hartman, 11 Misc 3d 140[A], 2006 NY Slip Op 50665[U] [App Term, 1st Dept 2006]; PCV/ST LLC v Finn, 2003 NY Slip Op 50897[U] [App Term, 1st Dept 2003])” (id. at 105-106).
Of special note in the said decision is the statement that the landlord had no duty to return unsolicited checks and thus allow the tenant to occupy the apartment at no cost.
In the case at bar, there is no evidence that petitioner intentionally waived its right to evict respondent by the acceptance of the two rent checks in July of 2014. Based upon the above rationale from the Second Department, there was no duty upon petitioner to return the two checks which were regularly sent to pay respondent’s rent. Petitioner didn’t demand the rent after service of the 30-day notice or offer respondent a renewal lease. Petitioner was not required to allow respondent to reside rent free in the apartment.
The rationale of Georgetown Unsold Shares, LLC v Ledet was reaffirmed with approval by the Second Department in Matter of State of New York v Ted B. (132 AD3d 28, 35-36 [2d Dept 2015]), wherein the following is stated:
“The essence of a waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it (see Johnson v Zerbst, 304 US 458, 464-465 [1938]; People v Harris, 61 NY2d 9, 17 [1983]; City of New York v State of New York, 40 NY2d 659, 669 [1976]; Matter of Georgetown Unsold Shares, LLC v Ledet, 130 AD3d 99 [2d Dept 2015]). ‘[K]nowledge and intent are essential elements’ (People v Cox, 71 AD2d 798, 798 [1979]). The waiver ‘must be clear, unmistakable and without ambiguity’ (Matter of Civil Serv. Empls. Assn. v Newman, 88 AD2d 685, 686 [1982], affd 61 NY2d 1001 [1984]).”
In the case at bar, there is no evidence that petitioner intentionally relinquished a known right, i.e., the right to terminate the tenancy of respondent by service of the 30-day notice.
This court is aware of other cases holding the opposite of the above. The opposing rule is summarized in Scherer & Fisher, Residential Landlord-Tenant Law in New York § 11:6 (“Ac *295 ceptance of rent as waiver—What constitutes ‘acceptance of rent’—Retention of check may be ‘acceptance’ ”):
“Retention of a tenant’s check, even if it is not cashed, can constitute acceptance and result in waiver of the right to proceed with a holdover proceeding. 220 West 42 Associates v. Cohen, 60 Misc. 2d 983, 302 N.Y.S.2d 494 (App. Term 1969); 800 Northern Corp. v Nextel of New York, Inc., 9/11/2002 N.Y.L.J. 22, col. 2 (Nassau Co. Ct.); Gomez v Haldas, 9/21/2004 N.Y.L.J. 19, col. 3 (Dist. Ct. Nassau Co.); Community Housing Innovations, Inc. v. McKee, 10 Misc. 3d 1069(A), 814 N.Y.S.2D 560 (N.Y. Dist. Ct. 2006) (month-to-month tenants could not be evicted based on termination notice intended to be effective at the end of September where landlord failed to return October and November rent checks until December).”
The court declines to follow the above line of cases based upon the two holdings of the Second Department handed down in 2015. There is no evidence that petitioner intentionally waived its right to evict respondent.
Conclusion
The motion for summary judgment is denied.